## UNITED SHOE MACHINERY CO. v. L. Q. WHITE SHOE CO.

(Circuit Court of Appeals, First Circuit. March 2, 1922.)

No. 1489.

1. Patents ⚙⟶328—1,143,740, claims 11, 15, 19–23, for machine for setting blind eyelets in shoes held valid, but not infringed.

The Wales patent, No. 1,143,740, for machine for setting blind eyelets in shoes, claims 11, 15, 19–23, *held* valid as limited and not infringed.

2. Patents ⚙⟶328—1,143,741, claims 1–3, 5, 6, for method of setting blind eyelets in shoe uppers, held void for lack of invention.

The Wales patent, No. 1,143,741, for method of setting blind eyelets in shoe uppers, claims 1–3, 5 and 6, *held* void for lack of invention, and also not infringed, if conceded validity.

---

Appeal from the District Court of the United States for the District of Massachusetts; Charles F. Johnson, Judge.

Suit in equity by the United Shoe Machinery Company against the L. Q. White Shoe Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 270 Fed. 650.

Emery, Booth, Janney & Varney, of Boston, Mass. (Frederick L. Emery and Preston Upham, both of Boston, Mass., of counsel), for appellant.

Francis J. V. Dakin, of Boston, Mass., for appellee.

Before BINGHAM and ANDERSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for Massachusetts in an equity suit charging infringement of two letters patent, Nos. 1,143,740 and 1,143,741, issued June 22, 1915, to the United Shoe Machinery Company, assignee through mesne assignments from Alfred B. Wales. The first is for a machine for setting blind eyelets in shoes, the application for which was filed May 4, 1912, and the second is for a method for setting blind eyelets in shoe uppers, applied for April 25, 1914. The defenses are invalidity and noninfringement.

[1] In the machine patent, the claims in issue are Nos. 11, 15, 19, 20, 21, 22, and 23. In the method patent, they are Nos. 1, 2, 3, 5, and 6.

Claim 15 reads as follows:

"15. A machine for inserting blind eyelets in shoe uppers having, in combination, a tool with its end shaped for punching, said tool being movable in the machine to enter a shoe upper from one side thereof and to perforate both the lining portion and the outer portion, an eyelet carrying set movable toward the opposite side of the upper, while the tool remains in the upper for inserting an eyelet in one portion, and means for clinching the barrel of the eyelet on said portion and beneath the other portion of the upper while the tool remains in the upper."

In all the claims in issue no particular means for clinching the eyelet are stated, and the qualifying language in all the claims, except 21, is:

"Before the tool is withdrawn from the upper" (claim 11); "while the tool remains in the upper" (claim 15); "while the tool remains in vertical line with the set and in its lowermost position" (claim 19); "while the punch remains in position at the end of its feeding movement" (claim 20); "before the feeding member is withdrawn from the hole in the upper" (claim 22); "while the feeding member still controls the position of the upper" (claim 23).

In claim 21 the corresponding language as to the clinching means is as follows:

"Upsetting means located in line with said punch and set and between the two parts of the upper when the upper has been fed over the set, and means for operating the set, with the parts of the upper in this position, to set a fastener in the under part while the punch remains in its lowermost position."

Claims 20, 21, 22, and 23 describe the punch as a "feeding member movable to feed the upper."

In the court below these claims of the machine patent were held valid, if their scope was limited to structures the character and operation of which were similar to the character and operation of the structure described, and, as thus limited, were not infringed. In its opinion, after reviewing the state of the art and pointing out the use to which the old Duplex machine could be put in setting invisible eyelets, which machine was commonly used in setting visible eyelets, the court said:

"I do not think that Wales can be said to be a 'pioneer' in that he produced a wholly novel device which would entitle him to a broad range of equivalents. When he had before him the Duplex machine with its thick anvil, the problem presented was how to make the anvil thinner, so that the relation of the leather of the upper to the lining might not be so disturbed that the hole in the leather would not register with the eyelet when set in the lining. While making the anvil thinner and inserting it between the leather and the lining more nearly accomplished the result which he desired, I do not think it can be said it was invention of a high order, which entitled him to a broad range of equivalents, to cut down the thickness of the intermediate anvil and to provide an attachment to an old machine."

Accordingly the court concluded that "the broad and general language of the claims, 'means for clinching the barrel of the eyelet upon the lining beneath the outer portion of the upper,' should be restricted to the means described in the patent or substantial equivalents," and it further pointed out that the range of equivalents should be limited "to any anvil which may be interposed between the leather and the lining of a shoe upper when the edges are unstitched and not undertrimmed," and that, thus limited, the defendant's alleged infringing device, a punch with a shoulder upon it (Fig. 7, Muther patent), did not fall within the range of equivalents as thus defined and did not infringe; that in the use of the defendant's punch the "edges of the upper are stitched and undertrimmed" before the work of setting and clinching the eyelets is undertaken and during which operation "no part of the punch, which has penetrated both leather and lining, is withdrawn from either."

We think the court below was right in limiting the scope of the claims in this manner. The problem presented to the patentee of clinching an eyelet in an upper without stretching the leather, so as to disturb the alignment of the holes, where the edges of the leather and lining parts are open, was of a limited nature in view of the use to which the old Duplex machine could be put in setting invisible eyelets, of which fact the patentee was aware, it having been called to his attention by his father. He had also made use of the old Duplex machine with its thick anvil to set invisible eyelets, and ascertained that the difficulty encountered of stretching the leather and getting the holes out of alignment could be overcome by reducing the thickness of the anvil, which he subsequently, in the perfection of his device, did; and there is nothing in the specification showing that he had before him any other problem, or that he had thought of or undertaken to solve the clinching of eyelets between the outer and lining parts of an upper, the edges of which had been sewed together and undertrimmed. The broad claims in issue support rather than controvert this view, for they were not introduced into the specification until more than two years had elapsed after the application was filed, and after the device of the defendant

was put upon the market, and the plaintiff, the assignee, had learned of later inventions similar in character to the defendant's.

The device which the patentee contrived, of a thin plate with an anvil or upsetting device upon it, contemplated that it should be put between the outer and lining parts of an upper, when the upper was placed by the operator upon the machine preparatory to punching the holes for setting blind eyelets, and of necessity required that the edges of the parts of the upper be left open. The device was designed for use in connection with the Glass-Peerless machine, and it no doubt involved a conception of a nature such as warrants its being regarded as an invention; but it clearly is not of a character that entitles it to broad claims necessitating for their validity a range of equivalents that will dominate the whole field of invisible eyeletting, whether the problem involved be the insertion of upsetting means between the outer and lining parts of an upper where the edges of the parts have been sewed and undertrimmed, as well as where the edges are left open.

The limit fixed by the ruling of the court in this case as to the range of equivalents was sufficiently broad, in view of the minor character of the problem which the patentee had presented to him, his knowledge of its solution gained from making blind eyelets in uppers with open edges on the old Duplex machine with its thick anvil, and the character of device he produced, which required that the edges of the outer and inner parts of the upper be left open to permit of its use.

We are also of the opinion that the device used by the defendant does not infringe. In the plaintiff's device the anvil *12*, or upsetting means, on the plate *2*, is placed between the open edges of the outer and lining portion of the upper when the upper is put upon the machine for blind eyeletting. The machine then punches a hole through both portions of the upper, the upper is thereupon fed along by the punch, and just before the punched hole reaches the anvil the lining portion is stripped from the punch and fed along, until the hole in the lining comes in position with the face of the anvil. At this point a tool comes up with an eyelet, forcing the barrel of the eyelet through the hole in the lining and against the anvil, riveting the eyelet upon the lining; the anvil being back-supported by the punch, the punch still remaining in the hole in the outer portion of the upper.

In blind eyeletting on the machine provided with the defendant's device (the punch with the shoulder), the lining and outer portions of the upper, when placed upon the machine, are not separated by an anvil, and could not be, as the edges of the lining and outer portion are sewed together and finished. With its parts sewed together the upper is placed upon the machine, which first punches a hole, and, remaining in the hole, feeds the upper along to a position in alignment with a tool which comes from below with an eyelet, crowding the barrel of the eyelet over the punch to a point between the lining and outer part of the upper. The barrel of the eyelet, being thrown out slightly while passing over the punch, engages the outer portion of the upper, and forces it up over the shoulder of the punch, thereby bringing the shoulder between the outer portion of the upper and the lining, which then clinches the barrel of the eyelet to the lining.

It is thus seen that in defendant's device the shoulder or anvil is brought between the lining and outer portion of the upper through the instrumentality of the eyelet, the punch remaining all the while through both portions of the upper, as would be the case if the machine was provided with the old punch for visible eyeletting; whereas, in the operation of the plaintiff's device the anvil is placed by hand between the lining and outer portion of the upper at the time the upper is placed upon the machine by the operative to do the work, and at the time of clinching the punch is removed from the lining, though remaining in the outer portion. Consequently the respective tools by which the work of clinching the eyelet is performed differ, not only in character, but in their mode of operation.

[2] The claims in issue in the process patent were held invalid on the ground that they should be limited to the mode of operation of the Glass-Peerless machine when equipped with the anvil and separating device of the plaintiff's machine patent, and, thus limited, they were void, as representing only the functions of the machine.

It is contended on the part of the plaintiff that this ruling is wrong, in that the process could be carried out by hand through the use of tools well known in the art, and also upon other machines to which the plaintiff's separating or interposed anvil device might be applied, as well as to the Glass-Peerless machine to which it was and is applied, and which is referred to in the specification of the process patent.

Whether the reason assigned for the conclusion reached is correct or not, we are nevertheless of the opinion that the claims are invalid. The plaintiff concedes that its process can be carried out by hand with the use of ordinary tools well known in the art. It is also apparent that a person skilled in the art of shoe-making, if called upon to punch holes and set blind eyelets by hand in an upper, the edges of the outer and inner layers of which are open, without disturbing the alignment of the holes—the problem said to have been solved by the patentee and disclosed by him in the specification of his method patent—could perform the work without the exercise of inventive thought. Such being the case, the claims, if given the breadth they plainly call for, are invalid.

But if it can be said that the claims could be sustained as for a method or process for setting blind eyelets in uppers, the edges of which are open, we do not think that the method employed by the defendant, in the operation of its device, infringes, as the method by which its device works is not the same as the plaintiff's.

The decree of the District Court is affirmed, with costs to the appellee.