## UNION SPECIAL MACH. CO. v. WILLCOX & GIBBS SEWING MACH. CO.

District Court, E. D. Pennsylvania. May 27, 1929.

No. 2501.

Fraley & Paul, of Philadelphia, Pa., for plaintiff.

Philip Mauro and Reeve Lewis, both of Washington, D. C., and Frederick A. Blount, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff sues for infringement of two patents, both having to do with a fabric guiding and trimming attachment, combined with a presser foot for a sewing machine for flat-seaming knit goods. The presser foot is the part of the machine which presses the fabric to be sewed down against the reciprocating feed dogs of the machine, by which it is advanced step by step to the needles for stitching.

The patents upon which the suit is based are Thompson patent, No. 1,273,108 for which application was filed July 20, 1915, and patent issued July 16, 1918, and McNeil patent, No. 1,300,854, for which application was filed July 20, 1915, and patent issued April 15, 1919. The plaintiff and defendant are both engaged in the business of manufacturing and selling sewing machines. The bill charges that, since the granting of the respective patents, the defendant has manufactured and sold within the United States sewing machines having presser feet embodying the improvements patented in the plaintiff's patents.

As to both patents, the defendant in its answer denies invention because of the prior art, as shown in patents of the United States, Great Britain, and Germany, and in prior publications, and because of prior use by other manufacturers and by the defendant. It also sets up the defense that, during the prosecution of the applications for each patent, the claims thereof were so limited that the plaintiff is not entitled to a construction of claim 1 of the Thompson patent or of

claim 7 of the McNeil patent, which are the only claims in suit, sufficiently broad to cover the apparatus for devices used by the defendant while at the same time defining patentable invention over the prior state of the art shown in anticipating patents and publications; and that, if the claims of the patents in suit are construed to apply to the defendant's presser foot, they are invalid, in view of the prior art, and apply only to structures not embraced by the invention of the patents in suit; also, that the claims in suit are void for double patenting in view of prior patents to the plaintiff.

Estoppel is claimed because, it is averred, the claims in suit were first introduced into the respective applications after the plaintiff had obtained knowledge of the defendant's structure; and, as to the claim in suit of the Thompson patent, it was first presented and allowed nearly three years after application; and, as to both patents, after accepting allowance of the applications with claims not applying in terms or substance to the defendant's structure.

The machines of the plaintiff and of the defendant accomplish the manufacture of underwear by a continuous flat-seaming process on a single machine. The garments, in accomplishing the in-seaming process, which, in union suits, unites the fabric forming the inside of the leg, are connected by a chain of stitches, subsequently cut between each garment. For the comfort of the wearer and the appearance of the garments, it is desirable that modern underwear have flat seams. In order to accomplish that, the edges of the fabric to be seamed are fed into the sewing machine in up-standing relation, trimmed to a uniform height, and compressed so that they pass flat under the presser foot and under the needles where they are united by a multiple stitching device. The presser foot must therefore have a contrivance for guiding the up-standing edges, trimming them, compressing them and delivering them to the stitch forming mechanism. As the parts of garments to be seamed together may be of varying thicknesses it is necessary, where such variations occur, to seam several thicknesses of fabric to a single thickness, and the multiple thickness may occur first on one side and then on the other side of the seam. As an ordinary presser foot of the old type is unyielding, it became of importance in the art, in order to avoid having the fabric passed into the sewing machine and under the presser foot in two or more operations, to provide a presser foot with a vertically yielding function so that it would yield on the side on which the multiple thicknesses occur in order that the seaming might be done in one operation, irrespective of the thickness of the fabric on one or other side of the device.

It is conceded that the presser foot was old in the art, and that it was old in the art to provide it with a yielding function to take care of extra thickness of fabric, and that the contrivance for guiding and trimming up-standing edges for flat-seaming was old. It is contended by the plaintiff, however, that it was novel to enable both the presser foot and the flat-seaming contrivance to operate properly irrespective of the thickness of the fabric on one or the other side of the seam, and that without the combination of parts claimed in the Thompson patent, the seams would gape and the complete flat-seaming of underwear could not be accomplished in one operation. The plaintiff claims that it has accomplished a new result by a new combination of a fabric guiding slot with a needle opening in rear of and in line with the slot, with a trimming mechanism having horizontal blades, one fixed to the presser foot and the other movable, to trim the fabric passing along the slot, and with a vertically yielding fabric engaging member.

The plaintiff put the combination construction here in suit into use by applying it to its Tandem Interlock machine in 1914, and claims that it was applied to the defendant's Flatlock machines in January, 1918. The plaintiff's Tandem Interlock machine and also its Autolap machine have been upon the market in competition with the defendant's Flatlock machine, and it is apparent from the evidence that these machines have gone into extensive use, one or the other type being in use in many of the underwear manufacturing plants of this country.

The contention of the defendant is that the plaintiff is not entitled to the broad construction of the claims in suit upon which it relies, and that, if a narrower construction is applied because of the history of what was done while the application was pending in the Patent Office, these claims do not read upon the defendant's device.

Claim 1 of the Thompson patent, showing the elements of the combination, is as follows:

"The combination of a presser foot having

"(1) A fabric guiding slot extending rearwardly from the front end thereof and having

"(2) A needle opening in rear of and in line with said slot and

"(3) A trimming mechanism including a horizontal blade fixed to said presser foot and a horizontally disposed movable blade co-operating with said fixed blade to trim the fabric sections passing along said slot, said presser foot at one side of the slot having

"(4) A vertically yieldable fabric engaging member whereby said presser foot is adapted to properly engage fabric sections of different thicknesses on opposite sides of the guiding slot."

The Thompson application was filed July 20, 1915. There was considerable correspondence between the solicitors for the applicant and the Patent Office which resulted in amendments to the specifications and claims as originally filed, through cancellation and alteration until, on February 13, 1918, the patentee was notified that the application for the patent had been allowed and that the final fee of $20 must be paid within six months. More than three months later, about the middle of May, 1918, the attorneys for the patentee requested the insertion of an additional claim, which was allowed and now appears as claim 1, the only claim in suit, of the Thompson patent.

It is entirely obvious upon examination that the claim is broader in scope than the claims contained in the application which had been allowed more than three months prior to its insertion. The differences between the other four claims of the Thompson patent and claim 1 in suit have to do with the vertically yieldable fabric engaging member of the presser foot, by means of which the presser foot is adapted to properly engage fabric of different thicknesses on opposite sides of the foot.

For example, in claim 2 we have: "Said presser foot being divided longitudinally to form independent foot sections respectively extending on opposite sides of said slot, means for supporting said sections whereby one section may vertically yield independently of the other section."

In claim 3 we have: "Said presser foot being divided longitudinally to form independent foot sections respectively extending on opposite sides of said slot, a presser bar, means for rigidly connecting one of said sections to the presser bar and means for supporting the other section whereby the same may vertically yield independently of the first named section."

In claim 4 we have: "Said presser foot being divided longitudinally to form independent foot sections respectively extending on opposite sides of said slot, means for supporting said sections whereby one section may vertically yield independently of the other section."

In claim 5 we have: "Said presser foot being divided longitudinally to form independent foot sections respectively extending on opposite sides of said slot, a presser bar, means for rigidly connecting one of said sections to the presser bar and means for supporting the other section whereby the same may vertically yield independently of the first named section."

And in the specifications it is set out: "An object of the invention is to provide a presser foot of the above character which is formed with a guiding slot extending rearwardly from the front end thereof to a point in advance of the needle opening, wherein the said presser foot is divided longitudinally to form independent foot sections extending on opposite sides of said slot, and wherein said sections are supported so that one section may vertically yield independently of the other."

Again in the specifications it is stated: "A still further object of the invention is to provide a presser foot and trimming mechanism of the above character with a strip deflector which is carried by the main portion of the presser foot and which extends across the slot and is spaced from the auxiliary or yielding section so that said section may move vertically within certain limits."

And throughout the specifications there is repeated reference to the main foot section and the auxiliary yielding section of the presser foot.

The whole tenor of the specifications and the claims regarding the presser foot is that it is composed of two sections, a main section and an auxiliary vertically yielding section divided longitudinally, which together form an entire presser foot in which the compensation for varying thicknesses of fabric to pass thereunder is provided by the vertically yielding function of the auxiliary section which, together with an extension of the main section, forms the sides of the guiding slot.

While the Thompson patent was pending, beginning in January, 1918, the defendant took the presser foot of its Flatlock machine and provided compensation for varying thickness of fabric by attaching to the bottom of the foot two bowed springs made of flat strip steel, each secured at its forward end to the presser foot by a screw and extending longitudinally along and over and bowed away from the bottom surface of the foot body. At their rear ends the springs loosely hook upwards around the rear edge of the foot body and are connected together

by a wire link. At its inner edge, each spring is shaped to generally conform to the outline of the fabric guiding slot or channel of the presser foot to which it is applied and is offset to avoid passing over the needle holes and to clear the yielding compensating bottom or chaining-off section of the presser foot. These springs by flexing and bending more or less under downward pressure are enabled to compensate for the engagement of greater to lesser thicknesses of fabric under either side of the presser foot.

This bottom spring forms the work engaging member of the defendant's construction and is somewhat similar to the compensating spring of the defendant's Woodhead patent, No. 1,020,068. It forms the fabric engaging member of the defendant's device and yields vertically. The defendant's presser foot, however, is not divided longitudinally to form independent foot sections, the auxiliary member of which yields vertically independently of the main section. The presser foot is entire, provided with a slot to guide the fabric, as in the old type of presser foot, and, in providing bottom springs for the yielding function, it did not require invention on the part of any one to so form the inner sides of the springs that they would not interfere with the fabric passing through the slot nor with the needles passing down through the needle holes. This arrangement of the accommodation of the shape of the spring to the necessities of operation would occur to any ordinary mechanic and did not require inventive genius.

In the plaintiff's patents, the yielding function of the auxiliary member of its presser foot is obtained through an upstanding shank attached to the rear thereof which slides in a slot between lugs on the main shank, and the yielding and pressing-down function thereof is secured by a spring operating within the slot.

The McNeil patent was applied for July 20, 1915, and patent issued April 15, 1919. On September 20, 1918, the patentee was notified that his patent had been allowed and that the final fee must be paid within six months. On March 19, 1919, McNeil's attorneys requested the Patent Office to allow a new claim as claim 7 of the patent which is the only claim in suit of the McNeil patent.

Machines involving the McNeil patent have never been put upon the market, and the only essential difference between the McNeil and Thompson patents material to the suit is that the former calls for two auxiliary yielding sections one on each side of the main section operating in the same manner on either side as the one auxiliary section of the Thompson patent does on one side.

Meanwhile, in January, 1918, before the allowance of either of the patents in suit, the defendant had begun the application to its old prior art Flatlock machines of its bottom spring attachments and had put upon the market its device for obtaining compensation for varying thickness of fabric in presser feet, and it had become known to and had been seen by the plaintiff.

It is clear that the entire disclosure in the original statement of invention of the patents in suit is limited to a presser foot divided longitudinally to form independent foot sections, a main section, and in the Thompson patent an auxiliary yielding section alongside of the main section, and in the McNeil patent two auxiliary yielding sections, one on each side of the main section, and that, after the respective applications had been allowed and after the plaintiff had knowledge of and had made careful study of the defendant's presser foot and it had been put into commercial use, the claims in issue were introduced for the purpose of broadening the scope of the invention so as to bring the defendant's presser foot within the reading of the newly introduced claim. Moreover, the claim in suit of the Thompson patent was presented to the Patent Office without Thompson, the inventor, having anything to do with its enlargement and without additional oath. This was nearly three years after the application was filed. My opinion is that the defendant's structure does not read upon the original specifications or claims and that the invention claimed in either patent was that of dividing a presser foot longitudinally and for the purposes of compensation providing a vertically yielding member or vertically yielding members operated by spring mechanism in the main shank of the machine.

Thompson was no pioneer in the art. The yielding presser foot was well known and extensively applied in underwear sewing machines long prior to his alleged invention. ██ I think the rule laid down in Chicago & N. W. R. Co. v. Sayles, 97 U.S. 554, 24 L. Ed. 1053, must be applied. "Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use."

In Gilmer Co. v. Geisel (C. C.) 187 F. 606, decided in this court Judge MacPherson

928

said in an opinion sustained by the Circuit Court of Appeals, 187 F. 941: "Considering the history of the seventh claim, I think it must be narrowly scrutinized before it can be allowed to dominate the Geisel patent."

In that case the history of the claim under consideration was on all fours with that in the instant case, except that a shorter period elapsed in that case between the filing of the application and the introduction of the additional claim than in the case at bar.

Where a claim in a pending application for a patent has been amended by inserting therein language broad enough to include defendant's invention, and which was not included in the original claim, after the defendant began manufacturing his machine and placing it on the market, that fact is to be considered in determining the scope to be given the range of equivalents in plaintiff's patent. United Shoe Machinery Co. v. White Shoe Co. (D. C.) 270 F. 650.

In affirming Judge Johnson's decree in the above case the Circuit Court of Appeals (279 F. 35), through Judge Bingham, said: "The broad claims in issue support rather than controvert this view, for they were not introduced into the specification until more than two years had elapsed after the application was filed, and after the device of the defendant was put upon the market, and the plaintiff, the assignee, had learned of later inventions similar in character to the defendant's."

I think, therefore, that the plaintiff cannot be allowed to extend the invention of claim 1 of the Thompson patent or claim 7 of the McNeil patent through application of the doctrine of equivalents, where, as here, the claims in suit were broadened, after allowance of the applications, for the very evident purpose of covering the defendant's device. In view of the conclusions reached, I do not find it necessary to pass upon the validity of the patents in suit.

It is held that the defendant has not infringed either of plaintiff's patents. The bill may be dismissed with costs.